IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACOB J. LEW, Secretary of the | ) | 14-cv-2233 |
| Treasury, SERGIO ARELLANO, | ) | |
| SUSAN J. KASS, DAVID OYLER, | ) | Judge John Z. Lee |
| LARRY G. KOTTKE, JAMES M. | ) | |
| JOHNSON, LYNN G. GANZ, | ) | |
| PATRICK WOZEK, FRED SAVAGLIO | ) | |
| ROBERT TRZAKUS, DARLENE | ) | |
| MCVEY, NATIONAL TREASURY | ) | |
| EMPLOYEES UNION, UNKNOWN | ) | |
| DEFENDANTS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Johnson has filed suit against his former employer, the Internal Revenue Service, alleging that the IRS and several of its employees violated his constitutional, statutory, and common law rights by discriminating against him on the basis of his race, by retaliating against him for objecting to the race-based discrimination, and by failing to honor a collective bargaining agreement between the IRS and Johnson's union. Defendants have moved to dismiss the entire complaint for failure to state a claim. For the reasons given below, the Court grants Defendants' motion in part and denies it in part.

1

## Factual and Procedural Background

Johnson, an African American man, worked as a revenue agent at the IRS until his employment was terminated on May 7, 2010. 2d Am. Compl. ¶ 5. The terms and conditions of his employment were specified in a collective bargaining agreement (CBA) between the IRS and the National Treasury Employees Union. *Id.* ¶ 22.

According to Johnson, his supervisors at the IRS repeatedly discriminated against him on the basis of race and then retaliated against him for complaining about that discrimination. They also, he claims, violated the terms of the CBA governing his employment and denied him a fair hearing before firing him.

Johnson filed this lawsuit in March 2014, ECF No. 1, and filed an amended complaint on April 14, 2014, ECF No. 9. He brought claims ostensibly under the Fifth Amendment; the Thirteenth Amendment; 42 U.S.C. §§ 1981, 1985, and 1986; 31 U.S.C. § 3730(h); the Americans with Disabilities Act, the Labor Management Relations Act; and state common law. The Court dismissed the amended complaint on December 4, 2015, for failure to state a claim but allowed Johnson to file a second amended complaint to attempt to "correct the defects in his complaint." Order of 12/4/15 at 1, ECF No. 147. The Court presumes familiarity with the December 2015 order.

In his second amended complaint, as in his first, Johnson alleges that Defendants discriminated against him because he is African-American and retaliated against him because he complained about this discrimination. He claims

that Defendants' actions against him violated the First Amendment, Fourth Amendment, Fifth Amendment, and the Stored Communications Act, as well as 42 U.S.C. §§ 1985 and 1986. 2d Am. Compl ¶¶ 66–67, 87, 100, 120, 136–38, 147–50. He also asserts claims for breach of contract and denial of due process. *Id.* at ¶¶ 110, 275–76. Additionally, Johnson brings discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. Id.* ¶¶ 157–269.

## **Legal Standard**

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true. *Lavalais v. Vill. of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2), and must plead facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Pro se* complaints are to be construed liberally. *Turley v. Rednour,* 729 F.3d 645, 651 (7th Cir. 2013).

## **Analysis**

**I.  Preliminary Matters**

The Court notes that, throughout his response brief, Johnson argues that the Court "lacks jurisdiction" over Defendants' motion to dismiss. But because Johnson asserts federal claims in his complaint, the Court has jurisdiction over this case

3

under 28 U.S.C. § 1331, and that jurisdiction of course extends to a motion to dismiss the complaint.

Additionally, Johnson's second amended complaint names a new defendant, the National Treasury Employees Union. But Johnson did not request leave to add a new defendant, and, in any event, the complaint includes no specific allegations against the Union. For those reasons, the Union is dismissed as a defendant.

## II.   Claims Precluded by Title VII

### A.   Claims previously dismissed (Counts IV–VI)

In the December 2015 order, the Court dismissed Johnson's claims brought under the Fifth Amendment, the Thirteenth Amendment, and 42 U.S.C. §§ 1981, 1985, and 1986, explaining that Title VII was his "only option for bringing claims of race discrimination and related retaliation" against his former employer. Order of 12/4/15 at 2 (citing *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 835 (1976) (Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment")). Johnson's second amended complaint reasserts his discrimination claims under the Fifth Amendment and §§ 1985 and 1986, but these claims are still cognizable only under Title VII. As such, Counts IV–VI are dismissed as precluded by Title VII.

### B.   First Amendment (Count I)

Johnson's second amended complaint includes a new claim under the First Amendment. In support, he alleges that IRS employees, in retaliation for his speaking out about racial discrimination, prepared false performance evaluations that led to his termination. 2d Am. Compl. ¶ 64.

As Defendants argue, this claim suffers from the same defect as the discrimination claims above. Title VII is the "exclusive judicial remedy for claims of discrimination in federal employment." *Brown*, 425 U.S. 820, 835 (1976). Johnson thus cannot bring a claim for First Amendment retaliation that is based on discrimination he allegedly faced while employed by the IRS. "'[I]t is clear . . . that a federal employee is limited to the remedies for discrimination in the workplace provided by Congress in Title VII . . .' and cannot state separate, related claims under the First Amendment." *Jackson v. F.B.I.*, No. 02 C 3957, 2007 WL 2492069, at *9 (N.D. Ill. Aug. 28, 2007) (quoting *Patel v. Derwinski,* 778 F. Supp. 1450, 1457 (N.D. Ill. 1991); *see also Lockhart v. Sullivan*, 720 F. Supp. 699, 704 (N.D. Ill. 1989) (Title VII would preclude a federal employee's First Amendment claim if she contended that she was deprived of her rights in retaliation for filing discrimination charges). Because Johnson's First Amendment claim is premised on alleged workplace discrimination and thus is precluded by Title VII, Count I is dismissed.

### III.  Title VII Claims (Counts VII–XII)

Johnson asserts a number of claims under Title VII. Count VII is a disparate treatment claim, in which Johnson alleges that he was treated differently than a similarly situated white employee in that he was required to complete more work than the white employee during his one-year probationary period. 2d Am. Compl. ¶¶ 162–63, 168. In Count VIII, a disparate impact claim, Johnson alleges that African-American IRS employees are disparately impacted by a flawed process for challenging performance evaluations. *Id.* ¶ 183. In Count IX, Johnson asserts a disparate treatment claim against Defendant Kass, an IRS Territory Manager and

5

Johnson's supervisor and trainer, alleging that she "failed to guard against racial discrimination." *Id.* ¶ 199. In Count X, Johnson alleges that the IRS failed to promote him to the position of Senior Flow Through Specialist, for which he was qualified, because of his race. *Id.* ¶¶ 208–14, 225. In Count XI, Johnson claims that he experienced a hostile work environment while employed by the IRS and alleges that the harassment was severe and pervasive from the perspective of a reasonable African-American employee. *Id.* ¶¶ 233, 236–37. In Count XII, Johnson claims that the IRS violated Title VII by denying him training and a transfer, unless he withdrew his EEOC complaint and waived his union rights. *Id.* ¶¶ 253–55.

Defendants argue that these claims should be dismissed as time-barred. Mem. Supp. at 4–6. In order to bring a claim under Title VII, a plaintiff must first file a complaint with the Equal Employment Opportunity Commission and then must file suit within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e–16(c); *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013). Here, Defendants point out, the EEOC decision on Johnson's complaint is dated July 12, 2013, but Johnson did not file suit until March 27, 2014. Defendants argue that Johnson should be presumed to have received the letter by July 17, 2013, and thus was required to file suit by October 15, 2013. Mem. Supp. at 5.

In Johnson's second amended complaint, however, he alleges that he received the right-to-sue letter on January 14, 2014. 2d Am. Compl. ¶ 20. If that is true (and the Court must presume it to be true at this stage), his Title VII claims are timely. Johnson's allegation may prove to be false, of course, but because his complaint does

6

not indicate on its face that the statute of limitations for the claims has expired, dismissing his Title VII claims as untimely would be premature. *See Small v. Chao,* 398 F.3d 894, 898 (7th Cir. 2005) (statute of limitations is an affirmative defense that must be pleaded in an answer unless the complaint reveals on its face that the claim is untimely); *Del Korth v. Supervalu, Inc.,* 46 F. App'x 846, 848 (7th Cir. 2002) ("When the record does not make it clear when the statute of limitations began to run, a 12(b)(6) dismissal is premature."); *Myers v. Joliet Twp. High Sch. Dist. No. 204,* No. 12 C 1866, 2013 WL 3874057, at *4 (N.D. Ill. July 26, 2013) ("When [the plaintiff] actually received the right-to-sue letter . . . [is a question of fact] not properly considered on a motion to dismiss."); *Sawyer v. Columbia Coll.,* No. 09-CV-6962, 2010 WL 3081260, at *4 (N.D. Ill. Aug. 5, 2010). The Court thus declines to dismiss Johnson's Title VII claims as time-barred.

In addition to their timeliness argument, Defendants argue that Johnson's Title VII claims must be dismissed as to the individual Defendants[1]—those other than Jacob Lew who is sued in his official capacity—because Title VII does not permit individual liability. Mem. Supp. at 6–7. Defendants are correct. The text of the statute clearly states that "the head of the department, agency, or unit" is the proper defendant in a Title VII lawsuit, 42 U.S.C. § 2000e-16(c), and the Seventh

---

[1] Johnson seemingly intends to sue these defendants in their individual capacities. If instead he means to sue them in their official capacities, the claims against them would still be dismissed because naming them along with Secretary Lew is redundant. *See Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985) (official capacity suit is suit against governmental entity).

7

Circuit has further clarified that individual liability is not permitted by Title VII, *see Williams v. Banning,* 72 F.3d 552, 555 (7th Cir. 1995). Therefore, Counts VII–VIII and X–XII must be dismissed as to the individual Defendants, and Count IX—Johnson's Title VII disparate treatment claim against Defendant Kass—must be dismissed in its entirety.

## IV. Breach of Contract Claim (Count XIII)

Johnson also includes a claim for breach of contract in his second amended complaint. He alleges that the IRS breached the collective bargaining agreement (CBA) governing his employment by requiring him to complete a greater number of taxpayer examinations than the CBA required. 2d Am. Compl. ¶¶ 275–76.

The Court previously dismissed a state law breach of contract claim from Johnson's first amended complaint, explaining that the "Agreement" Johnson referenced in that claim was presumably the CBA, and thus "his claim 'must be dismissed as preempted by federal labor contract law.'" Order of 12/4/15, at 5 (quoting *Greenslade v. Chi. Sun-Times, Inc.*, 112 F.3d 853, 868 (7th Cir. 1997)). In his second amended complaint, Johnson makes explicit that his current breach of contract claim is indeed a claim for breach of the CBA. And in his brief in response to Defendants' motion to dismiss, he clarifies that this claim, like his earlier breach of contract claim, is brought under state law rather than federal labor contract law. *See* Resp. Br. at 12 n.17 (citing Illinois contract cases), ECF No. 184.

Defendants argue that Johnson's current contract claim should be dismissed as preempted by § 301 of the Labor Management Relations Act (LMRA), just as was his earlier contract claim. Mem. Supp. at 9. Johnson responds that this claim

8

should not be dismissed as preempted, relying on *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412–13 (1988), in which the Supreme Court held that a state law retaliatory discharge claim was not preempted by federal labor contract law because the claim did not depend on an interpretation of the CBA that governed the plaintiff's employment. *See* Resp. Br. at 11. Johnson argues that his contract claim does not depend on the interpretation of a CBA because the CBA's meaning is obvious. *Id.*

Johnson's reliance on *Lingle* is misplaced. That case does not stand for the proposition that some category of contract claims based on the breach of a CBA may be brought under state law rather than the LMRA. *Lingle* merely holds that state law claims are preempted by federal law only if they are "dependent upon the terms" of the CBA. 486 U.S. at 412–13. Johnson's claim for breach of contract is, of course, dependent on the terms of the contract in question, the CBA, even if the meaning of the terms is obvious. Accordingly, this claim must be dismissed as preempted. *See Greenslade*, 112 F.3d at 868.

## V. Fourth Amendment & Stored Communications Act Claims (Count II)

### A. Fourth Amendment

Johnson has also brought a new claim under the Fourth Amendment in his second amended complaint. He alleges that on or about May 15, 2010, Defendants Kottke and Kass, his superiors at the IRS, sent "unidentified" investigators from the Treasury Department's Office of the Inspector General to his residence. 2d Am. Compl. ¶ 88. One of the agents gained access to the lobby of the building where

9

Johnson lives by displaying his badge and firearm to the building's property manager. *Id.* ¶ 88. Johnson was not home at the time, but the investigator walked around the property. *Id.* Johnson does not allege that the investigator entered his actual residence.

When Johnson returned home, the property manager informed him that he (Johnson) "was being 'indicted' by the federal government for a 'crime.'" *Id.* ¶ 89. Johnson then telephoned the investigator, who explained that the "purpose of her visit . . . was to recover [a] printer" belonging to the IRS. *Id.* Johnson offered to "to bring [the printer] downtown but the [investigator] demanded to pick it up from [his] residence." *Id.* (He does not explain in his complaint how he was able to call the investigator whom he now refers to as "unidentified").

Later the same day, two investigators, also "unidentified," arrived at Johnson's residence. *Id.* ¶ 90. He alleges that they subjected him to "improper questions" and "coercion," leading him to believe he was not permitted to leave. *Id.* They inquired about his EEOC complaint, asked whether he had plans to file a lawsuit, and threatened him with an indictment. *Id.* ¶¶ 91–92. Johnson was never indicted, but he contends that Defendants' conduct had the potential to inflict "reputational harm leading to the denial of his security clearance." *Id.* at ¶ 98. He also denies that the investigators had probable cause to conduct the alleged "search" and "seizure."

Defendants argue that this claim also must be dismissed as precluded by Title VII. Resp. Br. at 4. Johnson is alleging that Defendants Kottke and Kass sent

the investigators to his home for retaliatory reasons, and although these events occurred after Johnson's employment at the IRS had been terminated, "post-termination acts of retaliation that have a nexus to employment are actionable under Title VII." *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 888 (7th Cir. 1996). Furthermore, post-termination retaliatory conduct is actionable under Title VII where former employees allege, as Johnson does, that the retaliation "impinges on their future employment prospects." *Id.* at 891. Here, the nexus between Johnson's employment with the IRS and Defendants' alleged retaliatory conduct is explicit in Johnson's complaint.

But Title VII does not automatically preclude Johnson's Fourth Amendment claims simply because he alleges that Defendants acted with a retaliatory motive. The basis for Johnson's claims is that Defendants' violated the Fourth Amendment by conducting a search and seizure without probable cause. Whether he is correct does not depend on whether Defendants sought to retaliate against him, and this disconnect distinguishes Johnson's Fourth Amendment claims from his race discrimination and First Amendment retaliation claims. Title VII maps onto the latter claims directly. But the success of the Fourth Amendment claims hinges on the purported lack of probable cause rather than on discrimination or retaliation. *See Lockhart,* 720 F.Supp. at 703 ("[I]f [Plaintiff] states claims for discrimination in her employment, Title VII bars them; if her constitutional claims do not relate to employment discrimination, Title VII has no effect on them."); *Rochon v. Dillon,* 713 F.Supp. 1167, 1171 (N.D. Ill. 1989) ("Title VII does not preclude separate remedies

11

for unconstitutional action other than the areas of discrimination barred by that statute.") (citing *White v. GSA,* 652 F.2d 913, 917 (9th Cir. 1981).).

Preclusion is not the only question, however, and the Court concludes that Johnson's Fourth Amendment claim must be dismissed as untimely. Although a statute of limitations defense normally must be pleaded in the defendant's answer, "a district court may dismiss under Rule 12(b)(6) something that is indisputably time-barred." *Small v. Chao,* 398 F.3d 894, 898 (7th Cir. 2005). And that standard is met here. According to Johnson's complaint, the purported Fourth Amendment violations occurred on May 15, 2010, and he learned of them the same day. 2d Am. Compl. ¶ 84. Because a Fourth Amendment cause of action accrues "at the time of the unlawful search or seizure," *Gonzalez v. Entress,* 133 F.3d 551, 553 (7th Cir. 1998), the limitations period began to run that day. The limitations period was two years, *see Delgado-Brunet v. Clark,* 93 F.3d 339, 342 (7th Cir. 1996), so Johnson's Fourth Amendment claims needed to be brought by May 15, 2012. Yet he did not even file this lawsuit until 2014, and he did not assert his Fourth Amendment claims[2] until this year. Because the claims are indisputably time-barred, they are dismissed with prejudice.

---

[2] An additional problem with Johnson's Fourth Amendment search claim is that—to the extent he is arguing that the investigator illegally searched the common areas of his apartment building—he has not stated a claim. People do not have a "reasonable expectation of privacy" in the common areas of their apartment buildings, which means that searches of such areas do not implicate the Fourth Amendment. *See United States v. Concepcion*, 942 F.2d 1170, 1172 (7th Cir. 1991) ("The area outside one's door lacks anything like the privacy of the area inside . . . [A] tenant has no reasonable expectation of privacy in the common areas of an apartment building."); *Murphy v. City of Chicago*, No. 14 C 7681, 2015 WL 1746554, at *2 (N.D. Ill. Apr. 15, 2015).

## B. Stored Communications Act

Johnson also claims in Count II that Defendants' actions in pursuit of the printer violated the Stored Communications Act (SCA), 18 U.S.C. § 2701 *et seq*. The SCA prohibits an individual from "(1) intentionally access[ing], without authorization, a facility through which an electronic communication service is provided; or (2) intentionally exceed[ing] an authorization to access that facility; and thereby obtain[ing], alter[ing], or prevent[ing] authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. § 2701(a). Here, Johnson alleges that Defendants Kass and Kottke used Office of Personnel Management (OPM) databases to search for Johnson's home address, which they provided to the investigators who were dispatched to his residence. 2d Am. Compl. ¶ 87.

Defendants argue that Johnson's SCA claim is insufficiently pleaded because the SCA requires a plaintiff suing the United States to first present his claim to the "appropriate department or agency under the procedures of the Federal Tort Claims Act," 18 U.S.C. § 2712(b), and Johnson's complaint contains no allegations that he has exhausted administrative remedies before filing suit. Johnson counters that exhaustion is not required when an SCA claim is brought against individual defendants, as his is. Resp. Br. at 10.

But whether exhaustion is required before a plaintiff may sue an employee of the United States under the SCA need not be resolved in this case, because Johnson has clearly failed to state a claim under the SCA. He does explain how the

13

information retrieved from the OPM database—his home address—could be an "electronic communication" under 18 U.S.C. § 2510(12), nor does he allege that the OPM database is somehow a "facility through which an electronic communication service is provided" as required by § 2701(a). Because Johnson's complaint fails to state a claim under the SCA, the SCA portion of Count II is dismissed.

## VI. Due Process Claim (Count III)

In Count III of his second amended complaint, Johnson claims that Defendants violated his Fifth Amendment due process rights by denying him a fair hearing prior to his termination and a fair appeal afterward. 2d Am. Compl. ¶ 110. He alleges in support of this claim that he had a property right in his job and that Defendants failed to comply with the CBA that governed his employment. *Id.* ¶¶ 104–05, 109–10. He does not specify whether he was denied a hearing entirely or was afforded an unfair hearing.

Defendants argue that this claim is yet another race discrimination claim that is preempted by Title VII, *see* Mem. Supp. at 4, but the Court disagrees. Like Johnson's Fourth Amendment claims, his due process claim is distinct from any discrimination or retaliation claim, even if Defendants' motive for their actions was Johnson's race or his past complaints about their purported race discrimination. The success of a due process claim does not depend on whether the defendant had a discriminatory or retaliatory motive for withholding constitutionally required procedures. Rather, a due process claim requires only the "(1) deprivation of a

protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park,* 528 F.3d 530, 534 (7th Cir. 2008).

Nevertheless, Johnson's due process claim must be dismissed for failure to state a claim upon which relief can be granted. Although he has sufficiently alleged a "deprivation of a protected interest"—his property interest in his job under the CBA—he has not explained what constitutionally required procedures were unavailable to him. It is true that "the requirements of due process are 'flexible' and depend on the situation at hand," *Carmody v. Bd. of Trs. of Univ. of Ill.,* 747 F.3d 470, 479 (7th Cir. 2014), but in order to state a due process claim, a plaintiff must indicate what constitutionally required procedures were lacking, *see Brooks v. Ross*, 578 F.3d 574, 581–82 (7th Cir. 2009) (plaintiff must "provide notice to defendants of the contours of his § 1983 due process claim."); *Cunliffe v. Wright*, 51 F. Supp. 3d 721, 738 (N.D. Ill. 2014) (reference in complaint to a "sham hearing," without elaboration, was insufficient to state a due process claim). Because Johnson's allegations are insufficient to state a due process claim, Count III is dismissed.

## VII. Pending Motions

In addition to filing a brief responding to Defendants' motion to dismiss, Johnson has filed a motion to strike and numerous "objections" relating the motion to dismiss. ECF Nos. 182, 188, 190, 192. These filings—which are made up of baseless arguments about the Court's jurisdiction over the motion and a litany of disagreements with Defendants' assertions—are not a proper method of responding

to a motion to dismiss. Johnson was permitted to file a response brief only. He never requested or was given leave to file a surreply. The Court thus strikes these filings.

Johnson has also filed a motion to strike any references in Defendants' answer to his "class" allegations. ECF No. 174. Motions to strike are generally disfavored, *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989), and here the Court is unable to discern Johnson's reasons for seeking to strike these references. The motion to strike is therefore denied without prejudice.

Finally, Johnson has filed a motion under Fed. R. Civ. P. 706 to appoint an expert witness. ECF No. 191. Appointing an expert for any purpose at this stage of the case would be premature, however, so the motion is denied without prejudice.

## Conclusion

For the reasons stated herein, Defendants' motion to dismiss, ECF No. 159, is granted with respect to Counts I–VI, IX, and XIII. The motion is denied with respect to Counts VII–VIII and X–XII as to the IRS, but these claims are dismissed as to all individual Defendants and the National Treasury Employees Union. Plaintiff's motion to strike, ECF No. 182, and objections, ECF Nos. 188, 190, 192, are stricken. His motion to strike, ECF No. 174, and motion to appoint an expert, ECF No. 191, are denied without prejudice.

**IT IS SO ORDERED.**     ENTERED     8/10/16

_____
**John Z. Lee**
**United States District Judge**